UNITED STATES DISTRICT COURT
FOR THE DISTRICT OF COLUMBIA

| | |
|---|---|
| JACK J. GRYNBERG, et al.,<br><br>    Plaintiffs,<br><br>        v.<br><br>BP P.L.C., STATOILHYDRO ASA, BG GROUP P.L.C., BG NORTH AMERICA, JOHN BROWNE, ANTHONY HAYWARD, PETER SUTHERLAND, HELGE LUND, EIVIND REITEN, ROBERT WILSON, and FRANK CHAPMAN, individuals,<br><br>    Defendants. | Civil Action No. 1:08-CV-00301 - (JDB) |

## MEMORANDUM OPINION

On November 12, 2008, this Court dismissed plaintiffs' complaint against BP P.L.C., individual BP defendants, and Statoilhydro ASA and granted those defendants' motion to compel arbitration. Two motions remain pending in this case, both relating to BG Group, P.L.C. ("BG") -- the last defendant standing. BG, a United Kingdom corporation, was served with summons and plaintiffs' complaint on June 10, 2008.[1] By August 4, 2008, BG had not answered or otherwise responded to plaintiffs' complaint and the Clerk declared BG in default. Plaintiffs filed a motion for default judgment on August 7, 2008. BG filed a motion to set aside the default on August 13, 2008, which also sought to dismiss plaintiffs' complaint and to compel arbitration.

BACKGROUND

The parties in this case have a long and complicated history that does not need to be

---

[1] BG was served in compliance with the Hague Convention on the Service Abroad of Judicial and Extra-Judicial Documents in Civil and Commercial Matters.

recounted here. The Court described some of this history in its earlier November 12 opinion. See Memorandum Opinion ("Mem. Op.") at 2-3. But some background on an ongoing arbitration between plaintiffs and BG is needed to resolve the pending motions. Like BP and Statoil, BG entered into a settlement agreement with plaintiffs to resolve a dispute arising out of a business deal in Kazakhstan that turned sour. BG's settlement agreement was essentially the same as the other defendants' and requires the parties to submit all claims arising out of business dealings in Kazakhstan to arbitration. See BG Settlement Agreement at § 10.04. However, one notable difference between BG's settlement agreement and the other settlement agreements prevents a straightforward application of the Court's November 12 opinion to the pending motions. Whereas BP and Statoil entered into arbitration agreements governed by New York law, see Mem. Op. at 3, BG entered into an arbitration agreement governed by the law of Alberta, Canada, see BG Settlement Agreement at § 10.02. Pursuant to that agreement, plaintiffs initiated arbitration against BG in Alberta in July 2005.

Dissatisfied with proceedings before the Canadian arbitration tribunal, plaintiffs filed suit in this Court on February 21, 2008. Plaintiffs allege that BG, along with the other defendants, violated the Racketeer Influenced and Corrupt Organizations Act ("RICO"), 18 U.S.C. § 1962, and various state laws. See Compl. at ¶¶ 57-86. BG, believing that such claims fall within the scope of the settlement agreement (and must therefore be arbitrated), asked the arbitration tribunal to enjoin plaintiffs from pursuing their RICO suit in this Court. Through a series of steps that need not be detailed here, on June 11, 2008 BG obtained an injunction from the Court of Queen's Bench of Alberta -- the court designated to supervise the arbitration -- which enjoined plaintiffs from "taking any further steps" in their RICO claim and enjoined them from pursuing

any "issues or matters related to [BG's] business or activities in Kazakhstan . . . in any proceedings other than in an Alberta arbitration."  See BG's Memorandum in Support of Its Motions ("BG Mem.") at Ex. C-5 at 432.  Despite the injunction from the Alberta Court, plaintiffs have filed numerous affidavits and motions in this case seeking to hold BG in default.  Upon each filing, BG sought -- and obtained -- a holding from the Alberta Court that plaintiffs were in contempt of that court's orders.

## STANDARD

When considering a motion to compel arbitration, "the appropriate standard of review for the district court is the same standard used in resolving summary judgment motions" pursuant to Federal Rule of Civil Procedure 56(c).  Brown v. Dorsey & Whitney, LLP, 267 F.Supp.2d 61, 67 (D.D.C. 2003) (internal quotation marks omitted); see also Par-Knit Mills, Inc. v. Stockbridge Fabrics Co., 636 F.2d 51, 54 & n.9 (3d Cir. 1980).  Thus, the motion should be granted when the pleadings and evidence demonstrate that "there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." Fed. R. Civ. P. 56(c).  The movant bears the burden of demonstrating the absence of a genuine dispute of material fact.  See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).  The movant may support its motion by "identifying those portions of 'the pleadings, depositions, answers to interrogatories, and admissions on file, together with the affidavits, if any,' which it believes demonstrate the absence of a genuine issue of material fact." Id. (quoting Fed. R. Civ. P. 56(c)).

## ANALYSIS

The first issue is whether to set aside the default entered by the Clerk against BG.  A court may set aside an entry of default for "good cause." Fed. R. Civ. P. 55(c).  Three factors

guide courts in determining whether good cause exists: "whether (1) the default was willful, (2) a set-aside would prejudice plaintiff, and (3) the alleged defense was meritorious." See Keegel v. Key West & Caribbean Trading Co., 627 F.2d 372, 373 (D.C. Cir. 1980). "[S]trong policies favor resolution of disputes on their merits." Jackson v. Beech, 636 F.2d 831, 836 (D.C. Cir. 1980). Default is only necessary when a party is "essentially unresponsive." Id. (quoting H.F. Livermore Corp. v. Aktiengesellschaft Gebruder Loepfe, 432 F.2d 689, 691 (D.C. Cir. 1970)). Hence, "[o]n a motion for relief from the entry of a default or a default judgment, all doubts are resolved in favor of the party seeking relief." Id.

Based on the history of the Canadian arbitration recounted above, BG has made an ample good cause showing to set aside the Clerk's entry of default. Courts examine the circumstances of the default to determine whether it was willful. See Keegel, 627 F.2d at 374. Here, BG reasonably assumed that plaintiffs would not (repeatedly) violate the Alberta Court's orders enjoining them from prosecuting the case before this Court. Good faith reliance that another party will not seek entry of default demonstrates that default was not willful. Id. Nor would setting aside default prejudice plaintiffs. As discussed below, plaintiffs should have submitted this claim to arbitration under the settlement agreement, and hence should not have been before this Court in the first place. Finally, BG's defense is meritorious for the same reason -- plaintiffs' claim should be arbitrated, not litigated in court.

The second issue, then, is whether to dismiss plaintiffs' complaint against BG and to compel arbitration. The Court did so as to the other defendants -- BP, individual BP defendants, and Statoil -- in its November 12 order. The difference between those defendants and BG, however, is that arbitration with BG is taking place in Alberta, Canada under Alberta law. See

BG Settlement Agreement at § 10.02.  Plaintiffs argue that this difference is crucial and that it defeats BG's motion to compel arbitration.  Plaintiffs rely in large part on a footnote from Mitsubishi Motors Corp. v. Soler Chrysler-Plymouth, Inc., 473 U.S. 614, 637 n.19 (1985).  In dictum, the Mitsubishi Court wrote that:

> [I]n the event the choice-of-forum and choice-of-law clauses operated in tandem as a prospective waiver of a party's right to pursue statutory remedies for antitrust violations, we would have little hesitation in condemning the agreement as against public policy.

Id.  Plaintiffs contend that granting BG's motion to compel would operate as a waiver of plaintiffs' right to pursue its statutory RICO suit and would therefore be against public policy.  Plaintiffs' Memorandum in Opposition to BG's Motion at 3.

The Mitsubishi footnote notwithstanding, courts that have addressed the argument plaintiffs raise here have nonetheless enforced agreements to arbitrate.  Indeed, many courts confronted with the Mitsubishi footnote have found it inapplicable.[2]  When deciding the enforceability of a foreign forum selection clause, courts instead focus on two factors:  is the arbitration agreement related to a business deal that is international in character?  And can the plaintiff vindicate alleged misdeeds under the laws of the chosen forum?  See Scherk v. Alberto-

---

[2] See, e.g., Richards v. Lloyd's of London, 135 F.3d 1289, 1295 (9th Cir. 1998) ("Without question this case would be easier to decide if this footnote in Mitsubishi had not been inserted.  Nevertheless, we do not believe dictum in a footnote regarding antitrust law outweighs the extended discussion and holding in Scherk on the validity of clauses specifying the forum and applicable law."); Haynsworth v. The Corporation, 121 F.3d 956, 968 (5th Cir. 1997) ("We do not read Mitsubishi so broadly.  Setting aside the fact that it is dictum, the quoted statement, by its own terms, is limited to the antitrust context, as is Mitsubishi more generally."); Riley v. Kingsley Underwriting Agencies, Ltd., 969 F.2d 953, 957 (10th Cir. 1992) ("[Plaintiff] relies on an isolated sentence in a footnote in Mitsubishi . . . [but] [o]n these facts, we do not read Mitsubishi as restrictively as plaintiff when Mitsubishi is viewed against the backdrop of Supreme Court decisions in the area.").

Culver Co., 417 U.S. 506, 516-19 (1974).

The business deal that plaintiffs and BG agreed to arbitrate is plainly international in character. Plaintiffs are U.S. citizens, BG is a British company, the forum chosen is in Canada, and the business deal involved energy exploration in Kazakhstan. Agreement in advance "on a forum acceptable to both parties is an indispensable element in international trade, commerce, and contracting." The Bremen v. Zapata Off-Shore Co., 407 U.S. 1, 13-14 (1972). "[F]orum-selection clauses 'should be given full effect' when 'a freely negotiated private international agreement [is] unaffected by fraud.'" Scherk, 417 U.S. at 519 n.14 (quoting The Bremen, 407 U.S. at 13).[3] The need for certainty in international business deals thus counsels strongly in favor of compelling arbitration.

That plaintiffs may seek redress for the wrongs BG allegedly committed further counsels in favor of compelling arbitration. As a threshold matter, the Canadian arbitration tribunal has already determined that plaintiffs' RICO claims are arbitrable under the parties' settlement agreement. See BG Mem. Ex. C-5 ¶¶ 24-25. That agreement incorporated the Model Law of the U.N. Commission on International Trade Law ("UNCITRAL"). BG Settlement Agreement § 10.04(a). Like American Arbitration Association Rule R-8(a), UNCITRAL article 16(1) provides that the arbitration panel may rule on its own jurisdiction in the first instance. Just as incorporation of the AAA rules provided "clear and unmistakable evidence" that the parties intended the arbitrator, not a court, to determine arbitrability, see Mem. Op. at 7-9, incorporation of the UNCITRAL rules demonstrates that the parties intended the arbitrator to determine

---

[3] Plaintiffs here do not allege that BG fraudulently induced them into selecting Alberta as the forum for their arbitration.

whether plaintiffs' RICO claims can be arbitrated.  See Wal-Mart Stores, Inc. v. PT Multipolar Corp., No. 98-16952, 2007 WL 1079625 at *2 (9th Cir. Nov. 30, 1999); see generally Alan Scott Rau, The Arbitrability Question Itself, 10 AM. REV. INT'L ARB. 287, 369 n.230 (1999) (citing cases).

      Compelling arbitration is the correct result even if plaintiffs cannot pursue their claims under the RICO statute itself.  U.S. public policy is not thwarted so long as the wrongs alleged by the party resisting arbitration may be vindicated under the laws of the foreign forum selected.  See Scherk, 417 U.S. at 517, 519.  There is "no basis for a judgment that only United States laws and United States courts should determine this controversy in the face of a solemn agreement between the parties that such controversies be resolved elsewhere." Id. at 517.  To hold that the complained-of wrongs could only be properly addressed in the United States would "reflect a 'parochial concept that all disputes must be resolved under our laws and in our courts.'" Id. at 519 (quoting The Bremen, 407 U.S. at 9).

      Here, the laws of Alberta, Canada allow plaintiffs to pursue their claims.  Plaintiffs' RICO allegations boil down to claims for conspiracy, fraud, bribery, and theft.  Courts have routinely held that the wrongs RICO seeks to prevent can be vindicated in arbitrations applying foreign law.  See Richards, 135 F.3d at 1296; Roby v. Corp. of Lloyd's, 996 F.2d 1353, 1366 (2d Cir. 1993); cf. De Shazo v. Nations Energy Co., Civ.A.No. H-05-3277, 2007 WL 951568 (S.D. Tex. Mar. 27, 2007) (holding that a plaintiff's claim of "fraud, a fraudulent scheme under RICO, conspiracy, and breach of fiduciary duties" was "substantially the same" as a claim under Alberta, Canada law alleging "fraud, an oppressive scheme, conspiracy, and breach of fiduciary duties" for the purposes of collateral estoppel).  Hence, plaintiffs' claims are arbitrable even if the RICO

statute itself is not the vehicle for those claims.

## CONCLUSION

For the foregoing reasons, the Court sets aside the Clerk's entry of default against BG and holds that the arbitrator is the proper entity to decide whether plaintiffs' claims are arbitrable. Accordingly, BG's motion to compel arbitration will be granted and plaintiffs' complaint will be dismissed without prejudice. A separate Order has been issued on this date.

**SO ORDERED.**

/s/
JOHN D. BATES
United States District Judge

Dated:   February 9, 2009